IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MOUNIR NAFKHA,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION GRANTING MOTION TO REDUCE SENTENCE<br><br>Case No. 2:95-CR-00220-001-TC |

Prisoner Mounir Nafkha moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his nearly 73-year sentence in the custody of the United States Bureau of Prisons (BOP) to time served. To date, Mr. Nafkha has served approximately 25 years of his sentence. He asserts that the circumstances surrounding his sentence—which consists of four consecutively "stacked" counts under 18 U.S.C. § 924(c)—constitute extraordinary and compelling reasons for his early release. The court finds that Mr. Nafkha has satisfied his burden of showing extraordinary and compelling reasons to release him and that the balance of sentencing factors set forth in 18 U.S.C. § 3553(a) warrant his release. Accordingly, his motion (ECF No. 214) is GRANTED.

**FACTUAL BACKGROUND**

In 1995, Mr. Nafkha and four co-defendants robbed five banks in Salt Lake City. He was 23 years old at the time and had spent his teenage years in and out of juvenile detention, group homes, and even secure facilities. To carry out the bank robberies, Mr. Nafkha and his co-

1

defendants carried firearms, but no one was physically harmed during the course of the crimes. See Presentence R. (ECF No. 221)

Mr. Nafkha was charged with five counts of armed bank robbery under 18 U.S.C. § 2113(a), two counts of possessing a firearm as a convicted felon under 18 U.S.C. § 922(g)(1), and four counts of carrying and using a firearm during a crime of violence under 18 U.S.C. § 924(c). The United States offered Mr. Nafkha a plea bargain and explained that if he decided to plead guilty, his prison sentence would be about 30 years.[1] Mr. Nafkha declined the plea bargain and brought his case to trial. A jury found him guilty on all 11 counts.

Mr. Nafkha was sentenced to 72 years and eight months in prison. His sentence consisted of about 7.6 years for all five § 2113(a) counts, five years for the first § 924(c) count, and 20 years each for the remaining three counts under § 924(c). The court was required to consecutively stack each 20-year sentence for Mr. Nafkha's violations of § 924(c). Accordingly, 65 years were added to his sentence for his four § 924(c) violations.

Mr. Nafkha is currently incarcerated at USP Canaan. He has taken advantage of educational and rehabilitative opportunities while in prison and has completed a variety of training courses. He also has worked as medical and corridor orderly. One of his supervisors describes him as a hard worker who takes pride in his work. "He is dependable, and very respectful towards all staff, and fellow inmates." Def.'s Mot. Ex. 4 (ECF No. 214-4).

Mr. Nafkha's prison disciplinary record lists 34 offenses, but Mr. Nafkha has not been cited for any offenses or prohibited acts in the last four years. His inmate progress report states that he "had a good rapport with other inmates and staff. He is not considered a management

---

[1] In his motion, Mr. Nafkha says that the United States incorrectly calculated the 30-year sentence that it described in its plea offer. He asserts that had he pled guilty, a sentence at the bottom of the sentencing range would actually be 13 years. See Def.'s Mot. at 3 n. 1.

problem. He has maintained clear conduct since November 2016." Def.'s Mot. Ex. 5 at 2 (ECF No. 214-5).

Mr. Nafkha has a strong family support system and close relationships with his mother and sister. His sister and brother-in-law have expressed their ability and willingness to support him. See Def.'s Mot Ex. 6 (ECF No. 214-6). The United States points out that Mr. Nafkha has an immigration detainer, although neither party elaborates on how this affects Mr. Nafkha's future residence in the United States.

## FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS

Mr. Nafkha brings his motion under 18 U.S.C. § 3582, as amended by the First Step Act[2] (often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors listed in § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range. The defendant bears the burden of establishing that compassionate release is warranted under the statute. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Erickson, No. 2:17-CR-591 DB, 2020 WL 4732125, at *3 (D. Utah Aug. 14, 2020).

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the

---

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act, when Congress mandated that the USSC, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued a Policy Statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP Director, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). In the Commentary Application

Notes, the USSC defines "extraordinary and compelling reasons" in terms of the defendant's (A) medical condition,[3] (B) advanced age,[4] (C) family circumstances,[5] or (D) other reasons.[6] USSG 1B1.13 Commentary Application Notes 1(A)–(D).

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. But this court and many others have found that the Policy Statement does not curtail a court's discretion to determine what circumstances are extraordinary and compelling under § 3582(c)(1)(A)(i). In United States v. Maumau, this court joined the majority of other district courts in concluding that the Policy Statement does not limit the court's independent review of motions for compassionate release filed directly by defendants under the First Step Act. No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). Rather, the Policy Statement applies to motions for compassionate release filed by the BOP Director on behalf of a defendant. Id.

---

[3] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)–(ii).

[4] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).

[5] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

[6] The "Other Reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C.)" USSG 1B1.13 Commentary Application Note 1(D).

The circuit courts that have addressed this question reached the same conclusion. See United States v. McCoy, 981 F.3d 271, 281 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178 (7th Cir. Nov. 2020); United States v. Brooker, 976 F.3d 228, 235-237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion").

Even if the Policy Statement was controlling, the court would still have the authority to determine whether extraordinary and compelling circumstances exist in Mr. Nafkha's case. Mr. Nafkha's only possible outlet for relief under the Policy Statement is USSG 1B1.13 Commentary Application Note 1(D)— "Other Reasons." The Policy Statement does not define the parameters of this provide any measurable criteria for this category. Consequently, the court can find extraordinary and compelling reasons other than those delineated in USSG 1B1.13 Commentary Application Notes 1(A)–(C). See United States v. Haynes, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020); United States v. Cantu, 423 F. Supp. 3d. 345, 352 (S.D. Tex. 2019). Regardless of whether the court simply exercises its discretion under the First Step Act or follows the Policy Statement, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## **ANALYSIS**

The First Step Act requires Mr. Nafkha to satisfy the threshold requirement that he exhaust his administrative remedies with the BOP. If he does, he must convince the court that "extraordinary and compelling reasons warrant [the requested] reduction." 18 U.S.C.

6

§ 3582(c)(1)(A)(i). If he makes that showing, the court weighs the seven factors set forth in 18 U.S.C. § 3553(a), "to the extent that they are applicable," to determine whether Mr. Nafkha would present a danger to the public upon release. For the reasons set forth below, the court finds that Mr. Nafkha has exhausted his administrative remedies, established extraordinary and compelling reasons for his early release, and that the § 3553(a) factors weigh in his favor.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

On June 18, 2020, Mr. Nafkha submitted a compassionate release application to the warden of USP Canaan requesting that the warden move this court for a reduction of his sentence. The warden received his application on June 22, 2020. See Def.'s Mot. Ex. 1 (ECF No. 214-1). When Mr. Nafkha filed the present motion—October 9, 2020—he had not received a response from BOP. Id. Because more than thirty days have passed without response, Mr. Nafkha has satisfied § 3582(c)(1)(A)'s administrative exhaustion requirement.

2. **EXTRAORDINARY AND COMPELLING REASONS**

Mr. Nafkha argues that the following considerations, viewed together, are extraordinary and compelling reasons that warrant his early release: his young age at the time he committed his offenses, his rehabilitation in prison, his good character, the lengthy sentence imposed on him compared to his co-defendants, and Congress's amendment to § 924(c) that eliminated mandatory sentence stacking for charges in the same indictment.

At the time of Mr. Nafkha's sentencing, the stacking of multiple § 924(c) charges in the same indictment was mandatory; a sentencing court had no choice but to impose consecutive 5-year and 20-year mandatory minimums for multiple § 924(c) charges in the same indictment. See Deal v. United States, 508 U.S. 129 (1993). But when Congress passed the First Step Act in December 2018, it clarified that § 924(c) counts can only be stacked if the second offense occurs

after a final conviction on the first offense. See First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22. In other words, if sentenced today, a court would add only five years—not twenty—to each of Mr. Nafkha' § 924(c) violations.

In United States v. Maumau, this court found the Congress's decision to eliminate stacked sentencing under § 924(c), combined with several other considerations, constituted extraordinary and compelling reasons to grant release to a defendant very similar to Mr. Nafkha. 2020 WL 806121 at *5. The defendant in Maumau, who was 20 years old when arrested, was sentenced to 57 years in prison based on § 924(c)'s mandatory stacked sentencing. The court concluded that "a combination of factors— Mr. Maumau's young age at the time of sentencing, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment— establish an extraordinary and compelling reason" for the defendant's sentence reduction. Id. at *7.

Other district courts across the country have determined that certain defendants with sentences based on § 924(c)'s former stacking requirement have extraordinary and compelling reasons for their release. See United States v. Gaines, No. C17-264 TSZ, 2020 WL 7641201, at *2 (W.D. Wash. Dec. 23, 2020); United States v. Clausen, No. 00-291-2, 2020 WL 4260795, at *7 (E.D. Penn. July 24, 2020); United States v. Chan, No. 96-cr-00094, 2020 WL 1527895, at *5 (N.D. Cal. Mar. 31, 2020); United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020); United States v. Haynes, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020).

Mr. Nafkha was 23 when he was sentenced to spend almost 73 years in prison, 65 of which were based on his § 924(c) violations. If he were sentenced today, he would receive only 20 years for his § 924(c) violations. Like this court found in Maumau, Mr. Nafkha's young age at the time of sentencing, the incredible length of his sentence, and Congress's subsequent decision

to amend § 924(c), considered together, establish extraordinary and compelling reasons for his compassionate release.

The United States argues that "a court's belief that a mandatory sentence is too long" is not an extraordinary and compelling circumstance. Pl.'s Opp'n Br. at 18 (ECF No. 221). To support this argument, the United States asserts that the Policy Statement's controlling text, as well as legislative history and structure of the modern sentencing system, do not allow this court to grant compassionate release for Mr. Nafkha based on the length of his sentence. The United States also says that because Congress's amendments to § 924(c) do not apply retroactively, the statute cannot provide a basis for release.[7]

The court is not persuaded. First, the court finds extraordinary and compelling circumstances by viewing Mr. Nafkha's situation holistically. See Clausen, 2020 WL 4260795, at *7 ("[N]othing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons . . . Here, that combination includes both Clausen's demonstrated rehabilitation and the stacked sentence he received under 18 U.S.C. § 924(c)") (internal citation omitted).

Mr. Nafkha's young age at the time of sentencing and the fact that Congress later amended § 924(c) are important considerations, in addition to the length of his sentence.

Second, as previously described, the court is not limited by the text of the Policy Statement in granting compassionate release. Even if the Policy Statement was controlling,

---

[7] It is undisputed that the First Step Act amendments to § 924(c) do not apply retroactively. See United States v. Melvin, 777 F. App'x 652, 653 (4th Cir. 2019) (per curiam) ("Although the [First Step Act] altered the circumstances under which 18 U.S.C. § 924(c) offenses are subject to enhanced mandatory minimum sentences ... Congress expressly limited the retroactivity of that provision to offenses for which sentence was not yet imposed as of the First Step Act's date of enactment ....") (citations omitted).

USSG 1B1.13 Commentary Application Note 1(D) is a catch-all provision that allows the court to define "other reasons" that justify a sentence reduction. See, e.g. United States v. Vazquez, No. 2:06-CR-196-TC, 2020 WL 7247069, at *3 (D. Utah Dec. 9, 2020) (citing United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020). The Policy Statement does not curtail the court's discretion in finding that Mr. Nafkha's circumstances are "other reasons" that are extraordinary and compelling.

Third, legislative history and modern sentencing systems do not suggest that a court is precluded from considering the length of a defendant's sentence in its compassionate release determination. When Congress first created the path to compassionate release as part of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 (Oct. 12, 1984), the accompanying Senate Report indicated that sentence modifications would be appropriate in "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55–56 (1984).

This same report states that sentence modifications can apply "regardless of the length of sentence, to the unusual case in which the defendant's circumstances are so changed by terminal illness, that it would be inequitable to continue the confinement of the prisoner." S. Rep. No. 98-225 at 121. But the United States' claim that this "specifically decoupled the compassionate release inquiry from a court's substantive concerns about the sentence's length" is unsupported. Congress clearly indicated over thirty-seven years ago that it would be appropriate to provide compassionate releases when sentences are "unusually long," and the report's description of compassionate release based on a terminal illness is inapposite.

Finally, the fact that Congress' amendments to § 924(c) do not apply retroactively does not prevent the court from finding extraordinary and compelling circumstances exist for certain defendants. As this court held in Maumau, "[i]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." 2020 WL 806121, at *7; see also United States v. Quinn, 467 F. Supp. 3d 824, 829 (N.D. Cal. 2020) ("The fact that changes to § 924(c) were not categorically made retroactive does not prohibit the court from considering this legislative change in deciding whether to reduce [a defendant's] sentence.") (internal quotations omitted).

Mr. Nafkha has met his burden of showing extraordinary and compelling reasons for his release.

3. **BALANCING OF § 3553(a) FACTORS**

After finding that extraordinary and compelling reasons warrant a sentence reduction, the court must consider the factors set forth in §3553(a) to the extent that they are applicable to determine what type of new sentence to impose. The § 3553 factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established … in the guidelines …;

(5) any pertinent policy statement … issued by the Sentencing Commission …;[8]

(6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

  As described, Mr. Nafkha was in his early twenties when he committed the five bank robberies. Although no one was injured during the crimes, Mr. Nafkha already had an extensive juvenile record and had spent time in prison as an adult. See Presentence R. at 18–22. But Mr. Nafkha has spent his life in prison since the robberies, and his motion describes how he is not the

---

[8] The Policy Statement directs the court to first apply the § 3553(a) factors and "then determine if the defendant remains a danger to the safety of any other person in the community as provided in 18 U.S.C. § 3142(g)." USSG 1B1.13(2). § 3142(g) provides balancing factors comparable to those provided in § 3553(a), including:
  (1) the nature and circumstances of the offense charged,
  (2) the weight of the evidence against the person,
  (3) the history and characteristics of the person, including—
    (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;
    (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.
18 U.S.C. § 3142(g).

same person he was at age 23. He is now a dependable and respectful worker with a variety of vocational and professional skills, and he has a supportive family network.

This court explained in Maumau that a defendant who was 20-years old at the time he committed offenses "was legally an adult, who cannot entirely blame his youth or immaturity for his actions." Order Granting Mot. to Reduce Sentence, United States v. Maumau, No. 2:08-cr-00758, at 8 (D. Utah May 11, 2020) (ECF No. 1760). But the court decided that the defendant's "age and maturity today support the conclusion that he is less likely to become a recidivist." Id. Similarly, it has been 25 years since Mr. Nafkha committed his crimes. And though they were serious crimes, the court is persuaded that today Mr. Nafkha is unlikely to engage in dangerous criminal conduct.

There is no longer a need to enforce the sentence imposed on Mr. Nafkha to reflect the seriousness of his offenses, afford adequate deterrence to criminal conduct, protect the public from further crime, or provide Mr. Nafkha with educational or vocational training. Congress's amendment of § 924(c) indicates that Congress believes it is no longer necessary to impose consecutive 20-year sentences for violations of § 924(c) that are in the same indictment. And because Mr. Nafkha poses little risk to the public and has engaged in many educational and vocational activities. This factor weighs in favor or his release.

Mr. Nafkha's co-defendants, who all accepted plea bargains and chose not to go to trial, served sentences that were significantly shorter Mr. Nafkha's.[9] It has been ten years since any of

---

[9] Alibeti Vailolo was sentenced to 60 months' imprisonment and was released on April 4, 2000. United States v. Nafkha et al., No. 95-CR-00220-TC-4 (D. Utah May 22, 1996) (ECF No. 140). Clair Call was sentenced to 93 months' imprisonment and was released on October 27, 2006. United States v. Nafkha et al., No. 95-CR-00220-TC-5 (D. Utah May 16, 1996) (ECF No. 138). John Fonua was sentenced to 152 months' imprisonment and was released on January 26, 2007. United States v. Nafkha et al., No. 95-CR-00220-TC-3 (D. Utah July 16, 1996). Joshua Fonua

13

Mr. Nafkha's co-defendants have been in prison, yet Mr. Nafkha faces 38 more years of incarceration. These significant sentencing disparities weigh in favor of his release.

## CONCLUSION

After consideration of the parties' briefs and supplementary materials, the court concludes that extraordinary and compelling reasons warrant Mr. Nafkha's early release and that the § 3553(a) factors weigh in his favor. For the foregoing reasons, Defendant Mounir Nafkha's Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(i) (ECF No. 214) is GRANTED.

DATED this 8th day of January, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

---

was sentenced to 222 months' imprisonment and was released on December 28, 2011. United States v. Nafkha et al., No. 95-CR-00220-TC-2 (D. Utah May 7, 1996).